870 F.2d 586
 UNITED STATES of America, Plaintiff-Appellant, Cross-Appellee,
v.
FOUR PARCELS OF REAL PROPERTY ON LAKE FORREST CIRCLE IN
RIVERCHASE, SHELBY COUNTY, ALABAMA, Including a House
Located at 1218 Lake Forrest Circle, Riverchase, Shelby
County, Alabama, its Furnishings and All Appurtenances
Thereto, Owned By the Harbert-Equitable Joint Venture;
Sullivan Service Company, Inc.; Carpet Gallery, Inc.,
Defendants-Appellees,
Cessna Finance Corporation, Defendant-Appellee, Cross-Appellee,
Mitchell, Pino, Green & Medaris; W. Carlton Barnes and
Chadd L. Durrett, Jr., Defendant-Appellee, Cross-Appellant.
 No. 87-7576.
 United States Court of Appeals,
Eleventh Circuit.
 April 19, 1989.
 
 Frank W. Donaldson, U.S. Atty., Caryl P. Privett, Asst. U.S. Atty., Birmingham, Ala., for plaintiff-appellant, cross-appellee.
 John E. Medaris, Mitchell, Green, Pino & Medaris, Alabaster, Ala., Ann C. Robertson, Birmingham, Ala., for defendants-appellees.
 Marvin L. Stewart, Jr., Najjar, Denaburg, Meyerson, Birmingham, Ala., for Cessna Finance.
 Appeals from the United States District Court for the Northern District of Alabama.
 Before TJOFLAT and KRAVITCH, Circuit Judges, and PAINE,* District Judge.
 TJOFLAT, Circuit Judge:
 
 I.
 
 1
 This case involves a dispute over assets of a convicted narcotics smuggler and trafficker, Jack Frederick Hoback.[1] Beginning in the late 1970's, Hoback used airplanes owned by his aircraft leasing company to engage in a large scale, highly successful drug smuggling operation which imported Colombian cocaine and marijuana into the United States. Hoback and his wife Pamela used the proceeds of the narcotics operation to purchase four parcels of real estate in Riverchase, Alabama--a suburb of Birmingham. In 1981, the Hobacks built a residence on one of the lots, located at 1218 Lake Forrest Circle, which they valued at $750,000. The Hobacks held the four parcels and the house in joint tenancy, each having a one-half interest in the undivided whole.
 
 
 2
 On October 13, 1983, federal and local authorities arrested Jack Hoback in West Memphis, Arkansas for selling one kilogram of cocaine. Upon being arrested, Hoback contacted his attorney in Birmingham, John Medaris. That same day, Medaris flew to West Memphis to meet with Hoback and two Arkansas attorneys, W. Carlton Barnes and Chadd L. Durrett, Jr.
 
 
 3
 Following his meeting with Hoback, Medaris returned to Birmingham. On October 14 and 17, Medaris, using a power of attorney that Hoback had given to him on October 6, executed quit claim deeds transferring Hoback's one-half interest in the four parcels of property in Riverchase to Pamela Hoback. The quit claim deeds recite consideration of one dollar and "other good and valuable consideration." The power of attorney and the executed deeds were promptly recorded with the Judge of Probate of Shelby County, Alabama.[2]
 
 
 4
 On October 21, 1983, Pamela Hoback executed three documents that purported to give each of her husband's three lawyers--Medaris, Barnes, and Durrett--a mortgage upon the four Riverchase parcels. Each of the mortgages recited that it was in the sum of $25,000. The mortgages, however, failed to disclose the obligation that they were to secure; the space following the words "evidenced by," where the instrument of indebtedness should have been described, was left blank. The attorneys later testified that they received the mortgages to secure the legal fees Hoback had agreed to pay them for handling his criminal case in Arkansas. The mortgages were filed with the Shelby County Judge of Probate on the day of their execution--October 21, 1983.
 
 
 5
 On that same day, while these real estate transactions were taking place, the United States filed a complaint for forfeiture[3] in the United States District Court for the Northern District of Alabama against the four defendant parcels.[4] The action was brought under 21 U.S.C. Sec. 881 (1982 & Supp. IV 1986),[5] which provides that property acquired with the proceeds of a proscribed drug transaction is forfeitable to the United States. The Government based its complaint on reliable information that indicated that Hoback had purchased the Riverchase parcels and constructed his residence with the proceeds of narcotics trafficking. In addition to this information, the Government relied on evidence found on October 19 during a search of the Hobacks' residence, including approximately $40,000 in currency believed to be the proceeds of drug transactions,[6] and a passport which showed that Hoback had made several trips to Colombia and the Bahamas. Later searches uncovered three kilograms of cocaine and records of various narcotics transactions.
 
 
 6
 A warrant issued upon the filing of the complaint, and the four parcels of land were seized by the filing of a lis pendens with the Shelby County Judge of Probate.[7] The United States' lis pendens was filed on October 21, 1983, moments after the filing of the mortgages given by Pamela Hoback to the attorneys.
 
 
 7
 The three attorneys, Cessna Finance Corporation, and several lienholders filed claims in the forfeiture action.[8] The attorneys asked the court to declare that their mortgages on the defendant parcels were valid and superior to the Government's interest in the property. Cessna, in turn, alleged that it had "an equity" in the four parcels, because it previously had obtained a judgment against Jack Hoback in an Arkansas state court for failing to pay for an airplane he had purchased. During the course of the forfeiture proceedings before the district court, Cessna domesticated this judgment by bringing suit and obtaining judgment against Hoback in the United States District Court for the Northern District of Alabama. Cessna eventually recorded its domesticated judgment with the Shelby County Judge of Probate on April 2, 1984--over a year after the United States filed its lis pendens on the property.
 
 
 8
 On February 18, 1985, Cessna moved the court for leave to amend its claim in the forfeiture action to include an in personam claim against the Hobacks under Ala.Code Sec. 8-9-6 (1975) (hereinafter the Alabama Fraudulent Conveyance Act). According to Cessna, Hoback had conveyed his interest in the defendant parcels to his wife without consideration, thereby defrauding his creditors, including Cessna. Cessna asked the court to set aside the conveyance and then to declare the lien resulting from its domesticated judgment superior to the interests of the Government and the attorneys. No party objected to the litigation of this claim as a part of the Government's forfeiture action.[9]
 
 
 9
 On October 21, 1986, the district court, following a bench trial, found that the defendant property constituted the proceeds of illegal narcotics transactions; the court therefore declared the defendant property forfeit to the United States,[10] subject to any valid claims of Cessna and the attorney claimants, among others.[11] On February 6, 1987, the United States moved the district court for an order permitting the Marshal to sell the defendant property. None of the parties in the case objected to the sale, so on March 5, 1987 the district court granted the motion and ordered the property sold pending final disposition of the action. The court further ordered that "the sale be free and clear of all liens and mortgages and such liens and mortgages shall attach to the proceeds of the sale in the same manner and to the same extent as they may have attached to the property." The defendant property was sold for $458,000 pursuant to a Marshal's sale on June 18, 1987.[12]
 
 
 10
 On June 2, 1987, the district court, rejecting sub silentio Cessna's claim under the Alabama Fraudulent Conveyance Act, found that Hoback's transfer of his interest in the defendant property to his wife was valid. The court pretermitted consideration of the legal sufficiency of the attorneys' mortgages, holding instead that the sixth amendment to the United States Constitution gave the attorneys a lien against the defendant property. This lien secured the legal fees the attorneys incurred in defending Hoback against the criminal charges that flowed from his arrest in Arkansas. The court therefore concluded that the attorneys had priority over the claims of the United States because a "forfeiture cannot be employed to deprive Hoback of all sources of funds with which to employ counsel of his own choosing [to defend against a criminal charge]."
 
 
 11
 On August 6, 1987, the district court reconsidered its previous decisions. First, the district court found that Hoback's transfer of his interest in the defendant property to his wife violated the Alabama Fraudulent Conveyance Act because the transfer was for inadequate consideration; the court therefore concluded that the defendant property still was held by the Hobacks as joint tenants. Second, the court adhered to its earlier ruling that the attorneys' mortgages constituted liens on the property under the sixth amendment. Third, the court declared that Cessna's judgment lien attached to the defendant property as of April 2, 1984--the day it recorded its domesticated judgment. Finally, the court determined that the rights of the United States in the defendant property did not vest until October 21, 1986--the date of the court's forfeiture order. The court thus determined that the attorneys had first priority to the proceeds of the Marshal's sale, followed by the claim of Cessna; the remaining monies went to the United States.
 
 II.
 
 12
 In this appeal, taken by the Government, the following is not in dispute: first, that the defendant property was purchased with the proceeds of narcotics trafficking; and second, that Hoback's conveyance of the defendant property to his wife was a nullity, having been constructively fraudulent under Alabama law. Accordingly, the questions that we must decide are as follows. First, are the attorneys' mortgages valid under Alabama law, and, if so, are the attorneys "innocent owners" of such mortgages so that their mortgages are not subject to forfeiture under 21 U.S.C. Sec. 881? Second, if the attorneys' mortgage interests must fail, do the attorneys have liens on the defendant property under the sixth amendment? If not, can the attorneys raise any sixth amendment claim that their client might have on the defendant property? Third and finally, is the Government's interest in the defendant property superior to Cessna's judgment lien? We address these questions in the above order.
 
 A.
 
 13
 The first issue we consider is whether the mortgages given by Pamela Hoback to her husband's attorneys are valid under Alabama law. The Government contends that these mortgages are invalid under Alabama law because they fail to describe the underlying obligation of the mortgagor and the instrument memorializing that obligation.
 
 
 14
 A mortgage generally is defined as "an interest in land created by a written instrument providing security for the performance of a duty or the payment of a debt." Black's Law Dictionary 911 (5th ed. 1979). The attorneys argue that a debt incurred in order to secure the rendering of future legal services is sufficient to support a mortgage. An early decision of the Alabama Supreme Court addressed this issue:
 
 
 15
 The question has been much discussed as to how far mortgages of this character for future advances are good, and what should be the nature of their recitals. It seems to be clearly settled that, if they are not tainted with fraud, or bad faith, they are just as valid as if made to secure past indebtedness, not only as between the parties, but also as against subsequent purchasers and incumbrancers, so far, at least, as respects advances made before the equities of such purchasers or incumbrancers have attached.
 
 
 16
 Nor is it necessary in such a mortgage that a definite or specific sum should be stated on the face of the instrument as the ultimate amount intended to be secured. There is, it is true, a considerable diversity of opinion on this subject, but this conclusion is sustained by the weight of authority as the sounder principle. All that can be required is, that a mortgage designed to secure such future liabilities should describe the nature and amount of them with reasonable certainty, so that they may be ascertained by the exercise of ordinary diligence on proper inquiry.
 
 
 17
 Collier & Son v. Faulk & Martin, 69 Ala. 58, 60-61 (1881) (emphasis in original and added) (citations omitted).[13] Under Alabama law, therefore, a mortgage can secure the provision of future legal services.
 
 
 18
 The mortgages at issue in this case, however, fail to make a recital sufficient "to describe the nature and amount of [the underlying debt] with reasonable certainty," as required under Alabama law. As noted above, the space in the attorneys' mortgages following the words "evidenced by" was left blank. The mortgages thus fail to give notice of the nature of the underlying debt to a party making inquiry. As a result, we conclude that the attorneys have no security interest in the defendant property under Alabama law that they can assert against the United States. Having no cognizable interest in the defendant property, the attorneys fail to meet the preconditions for innocent-owner status under section 881.
 
 
 19
 Having so concluded, we are faced with the second question presented in this appeal: whether Hoback's counsel have any recourse under the sixth amendment to recover attorney's fees for representing Hoback in his Arkansas criminal prosecution.
 
 B.
 
 20
 The sixth amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall ... have the Assistance of Counsel for his defence." (Emphasis added). The plain language of the Constitution, therefore, establishes that the right of counsel belongs to the accused in a criminal prosecution, not to his attorneys. Hoback's attorneys point to nothing in sixth amendment jurisprudence to justify the extension of such a right to defense counsel, and we find no basis for so doing. We therefore conclude that the attorneys before us have no independent sixth amendment right to the defendant property: any sixth amendment right that the attorneys assert belongs to their client, not to themselves.[14]
 
 
 21
 Having so concluded, we must examine whether the attorneys before us have standing to assert their client's alleged sixth amendment claim to the defendant property. In general, the federal courts refuse to allow a litigant to raise the rights of another. See, e.g., Barrows v. Jackson, 346 U.S. 249, 255, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586 (1953) ("Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party."). This restriction on standing, however, is not mandated by the Constitution; rather, it "is only a rule of practice." Id. at 257, 73 S.Ct. at 1035. As such, the federal courts will allow a litigant to assert a third party's rights when (1) a third party has suffered an injury from the denial of a right, (2) that injury, in turn, has caused injury to the litigant, and (3) the facts of the case demonstrate that the litigant will be an effective proponent of the third party's rights. We conclude that Hoback's attorneys fail to meet the first element of this test; hence, they have no standing to bring a sixth amendment challenge to the civil forfeiture of the defendant property in this case.
 
 
 22
 The record in this case is clear. Apparently confident that the mortgages they had taken were valid and entitled to priority over the United States' asserted interest in the defendant property under section 881, the attorneys conducted Hoback's defense and prosecuted his appeal in the Arkansas courts. Thus, Hoback was never denied the right to counsel of his choice and there exists no sixth amendment violation that can support the attorneys' assertion of third-party standing. The attorneys therefore stand in the same position as any other creditor who, without first conducting sufficient research, advances services or cash in exchange for what later turns out to be an invalid or subservient mortgage. Had they accurately evaluated the validity of their mortgages and the implications of section 881, these lawyers might have refused to advance their services; having represented Hoback, however, they cannot satisfy their claim against him at the expense of the Government's prior interest.
 
 
 23
 In sum, we find that Hoback's attorneys have no rights in the defendant property under the sixth amendment and have no standing on the facts of this case to raise any alleged sixth amendment right belonging to their client; we therefore turn to an examination of Cessna's claims.
 
 C.
 
 24
 Cessna was not able to domesticate its Arkansas judgment until March 6, 1984. This judgment became a lien against the defendant property when it was filed with the Probate Court of Shelby County on April 2, 1984. See Ala.Code Sec. 6-9-211 (1975). Such a lien does not relate back to the date of the foreign judgment. See Butler v. Hughes, 271 Ala. 363, 124 So.2d 265, 272 (1960). The United States filed its lis pendens on October 21, 1983. Under Alabama law, the rights of all subsequent lienors are subject to the judgment resulting from this forfeiture action. See Merrill v. Travis, 248 Ala. 42, 26 So.2d 258, 259 (1946). Thus, a simple ordering of priorities in the defendant property establishes the superior right of the United States.
 
 
 25
 In any case, we note that the United States' rights in property seized pursuant to section 881 relate back to the time of the wrongdoing that gave rise to the forfeiture. See United States v. $41,305.00 in Currency and Traveler's Checks, 802 F.2d 1339, 1346 (11th Cir.1986) ("Illegal use immediately vests title to the property in the sovereign, and cuts off the rights of third parties to obtain legally protectible interests in the property."). Thus, the United States has priority in the defendant property over any claim of Cessna. Nor is Cessna an innocent owner: it did not acquire rights in the defendant property until after it had notice that the property was the proceeds of illegal narcotics transactions. The district court therefore erred in holding that Cessna had an interest in the defendant property superior to that of the United States.
 
 III.
 
 26
 We conclude that the interest of the United States in the defendant property is superior to that of both the attorneys and Cessna. The decision of the district court is, accordingly, reversed. On receipt of our mandate, the district court shall direct the clerk, who has possession of the proceeds of the Marshal's sale of the defendant property, to deliver such proceeds to the Government.
 
 
 27
 REVERSED, with instructions.
 
 
 
 *
 Honorable James C. Paine, U.S. District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 Hoback is currently serving a life sentence in an Arkansas prison for a conviction under Ark.Stat.Ann. Sec. 82-2617(a)(1)(i) (Supp.1983). The conviction was based on the October 13, 1983 cocaine transaction described in the text infra. See Hoback v. Arkansas, 286 Ark. 153, 689 S.W.2d 569 (1985)
 
 
 [2]
 Under Alabama law, real estate transactions are recorded in the probate court of the county in which the realty is located
 
 
 [3]
 Under the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, the government initiates an action for civil forfeiture by filing a complaint that is "verified on oath or solemn affirmation." Fed.R.Civ.P.Supp.R. C(2) (1988). The complaint must describe the property to be seized with "reasonable particularity," state that the property lies within the district, and state the reason why the property is subject to forfeiture. Id. In addition, the complaint must state "the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Id. Supp.R. E(2)(a) (1988)
 
 
 [4]
 The district courts have jurisdiction over actions for forfeiture. See 28 U.S.C. Secs. 1355, 1356 (1982). Venue for a forfeiture action, which is an in rem proceeding, is proper in any district court of the United States having jurisdiction over the property. See id. Sec. 1395(b) (1982)
 
 
 [5]
 Section 881 of Title 21 states that:
 (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 ....
 (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance ..., all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any [illegal narcotics transaction], except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
 21 U.S.C. Sec. 881(a) (1982 & Supp. IV 1986).
 
 
 [6]
 The currency was subsequently forfeited to the United States as the proceeds of proscribed narcotics activities. See United States v. $41,305.00 in Currency and Traveler's Checks, 802 F.2d 1339 (11th Cir.1986)
 
 
 [7]
 The Attorney General may seize real property that is subject to forfeiture through process issued by the district court pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims. 21 U.S.C. Sec. 881(b) (1982 & Supp. IV 1986). Upon the filing of a complaint for forfeiture, the clerk of the court "shall forthwith issue a summons and warrant for the arrest of the ... property." Fed.R.Civ.P.Supp.R. C(3). As here, when the object of the seizure is real property, the Attorney General usually calls upon the United States Marshal to execute the warrant and constructively seize the property by filing a lis pendens with the proper authorities
 
 
 [8]
 All persons claiming an interest in seized property have at least ten days following its seizure in which to file a claim. "The claim shall be verified on oath or solemn affirmation, and shall state the interest in the property by virtue of which the claimant demands its restitution and the right to defend the action." Fed.R.Civ.P.Supp.R. C(6). The claimants then must file an answer to the Government's complaint within twenty days of the filing of their claim. See id
 In the district court, the Hobacks also filed claims. In his claim, Jack Hoback stated that he had held an undivided one-half interest in the defendant property, but had conveyed that interest to his wife. She stated in her claim that she owned the property. Both denied that they purchased the defendant property with the proceeds of drug trafficking. The Hobacks have not appealed from the district court's rulings, set forth in the text infra, that the subject property constitutes proceeds of proscribed narcotics transactions and that Hoback's conveyance to his wife was fraudulent under the Alabama Fraudulent Conveyance Act, Ala.Code Sec. 8-9-6 (1975).
 
 
 [9]
 The court denied Cessna's motion, concluding that Cessna's earlier allegation--that it had an equity in the four Riverchase parcels--was broad enough to include the in personam claim it wished to prosecute. Arguably, Cessna's in personam claim against the Hobacks constituted a separate lawsuit since it sought, in effect, a court order requiring Pamela Hoback to convey a one-half interest in the defendant property to her husband, i.e. the interest he had conveyed to her earlier. As such, the court needed to find subject matter jurisdiction to entertain the claim. We find such jurisdiction under the diversity statute, 28 U.S.C. Sec. 1332 (1982), because Cessna and the Hobacks were citizens of different states, and thus do not consider whether the claim fell within the court's pendent claim jurisdiction
 
 
 [10]
 In a forfeiture proceeding, the United States has the burden of showing that it had probable cause to seize the res. See 21 U.S.C. Sec. 881(d) (1982 & Supp. IV 1986) (incorporating customs procedures); 19 U.S.C. Sec. 1615 (1982 & Supp. IV 1986) (customs procedures). Probable cause is defined as a " 'reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion' "--the same standard used to determine the legality of arrests, searches, and seizures in criminal law. United States v. $364,960.00 in United States Currency, 661 F.2d 319, 323 (5th Cir. Unit B Nov.1981) (quoting United States v. One 1978 Chevrolet Impala, 614 F.2d 983, 984 (5th Cir.1980)). Upon such a showing, the burden of proof shifts to anyone claiming an interest in the res to establish the innocence of the property. See 19 U.S.C. Sec. 1615
 
 
 [11]
 Even should the property have been involved in a proscribed narcotics transaction, a claimant may seek to show that his interest in the property has priority over that of the United States. A claimant has priority of right when his interest in the seized property arose before that of the United States. The United States' interest in the property, however, "relates back" to the moment in which the property became involved in the proscribed activity. See 21 U.S.C. Sec. 881(h) (Supp. IV 1986) (enacted in 1984); United States v. $41,305.00 in Currency and Traveler's Checks, 802 F.2d 1339, 1346 (11th Cir.1986) (finding as a matter of statutory construction that prior to the 1984 amendment section 881 related back to the moment of wrongdoing). Thus, all legal and equitable interests that arise subsequent to the proscribed activity which gave rise to the forfeiture are subordinated to that of the United States, despite that the holders of such interests had no actual notice that the property was subject to forfeiture. Because this rule can produce harsh results, section 881 exempts from forfeiture the interests of "innocent owners" of certain classes of property subject to forfeiture, including real estate. See 21 U.S.C. Sec. 881(a)(6), (7) (1982 & Supp. IV 1986). Such innocent owners have priority of interest in the property if they acquired their interest in good faith, for value, and without knowledge of the illegal activities that gave rise to the Government's right to seize the property
 
 
 [12]
 Under section 881, the Government can acquire no greater rights in the defendant property than were held by the owner whose illegal narcotics transactions gave rise to the forfeiture. Contrary to practice in admiralty, forfeiture under section 881 does not give the United States clear title to the forfeited property: the United States' interest is subject to all prior encumbrances on the property. Thus, lienholders need not fear that a forfeiture judgment in favor of the United States under section 881 will discharge their interests in the defendant property. For this same reason, however, the United States should seek to join all parties having legal or equitable interests in the seized property, for without such joinder the United States cannot acquire clear title to the property by means of the forfeiture proceeding
 We further note that the statute nowhere gives the court the power to sell the forfeited property in order to satisfy the interests of the various claimants, as the district court did here. On the contrary, the statute specifically grants the Attorney General the discretion to retain the property, to sell it, or to transfer the property to certain other government agencies. See 21 U.S.C. Sec. 881(e) (Supp. IV 1986). Sale of the property and satisfaction of claims goes beyond the purpose of the civil forfeiture action, which is limited to establishing the United States' interest in the defendant property. Thus, a judicial sale is proper only if all parties interested in the defendant property have been joined in the suit and consent to such a sale.
 
 
 [13]
 We are, of course, conscious of the early date of this decision. Nevertheless, the decision continues to reflect the settled law in this area. See 59 C.J.S. Mortgages Sec. 112 (1949) ("In order to render a mortgage valid as a lien on the land conveyed, as against third persons claiming interests, and to make it enforceable by foreclosure, it is necessary that it contain a description or identification of the debt or liability intended to be secured by the mortgage.")
 
 
 [14]
 We note that in his answer to the Government's complaint in forfeiture, Hoback made no claim that the defendant property was immune from forfeiture because he had set the property aside to pay the costs of his legal representation in Arkansas state court. Also, as we have already noted, see supra note 8, Hoback has not cross-appealed from the district court's decision declaring that the subject property is the proceeds of narcotics transactions and thus forfeitable to the United States under 21 U.S.C. Sec. 881