893 F.2d 1245
 15 Fed.R.Serv.3d 1387
 UNITED STATES of America, Plaintiff-Appellant,
v.
FOUR PARCELS OF REAL PROPERTY IN GREENE AND TUSCALOOSA
COUNTIES IN the STATE OF ALABAMA, etc.; J.C.
Pate, Jr.; Rita Pate; et al., Defendants,
Donald K. Daniel, Claimant-Appellee.
 No. 89-7061.
 United States Court of Appeals,
Eleventh Circuit.
 Feb. 6, 1990.
 
 Frank W. Donaldson, U.S. Atty., James D. Ingram, Birmingham, Ala., for plaintiff-appellant.
 Stanley Sikes, Sikes & Kelly, John W. Kelly, Selma, Ala., for claimant-appellee.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before TJOFLAT, Chief Judge, HATCHETT, Circuit Judge, and MORGAN, Senior Circuit Judge.
 HATCHETT, Circuit Judge.
 
 
 1
 In this forfeiture action, the government urges the reversal of the district court's ruling that the government failed to sufficiently allege and prove the forfeitability of property a convicted drug dealer purchased with cash, but titled in the name of a person not involved in drug dealing who claims to be the supplier of the cash. We affirm.
 
 I. FACTS
 
 2
 Donald K. Daniel ("Daniel"), the claimant, has been in the logging business since 1979. During July of 1983, he purchased a used International model TD15D dozer from J.C. Pate, Jr. for $16,000. Pate and Daniel were life-long friends, and Pate frequently operated dozers for Daniel. Daniel uses the dozer to build access roads for his logging trucks. When the dozer needed repairs, Daniel asked Pate to haul the dozer to a repair shop. When the repairs were estimated at more than the value of the dozer, the tractor dealer offered to accept the used dozer as a trade-in on a new TD12 dozer.
 
 
 3
 On August 9, 1983, Daniel brought $65,000 in cash to the home of Dorothy Daniel, his sister-in-law and bookkeeper. She delivered the cash to Pate, and he purchased the new dozer, putting it initially in the name of Bobby Daniel, Dorothy Daniel's husband. On August 18, 1983, Dorothy Daniel received the bill of sale for the dozer through the mail. She asked Daniel and her husband about the name on the bill of sale, and subsequently arranged for Daniel's name to appear on the bill of sale. Daniel placed the dozer on the books of the logging business and depreciated it on the business's state and federal income tax returns.
 
 II. PROCEDURAL HISTORY
 
 4
 On April 4, 1988, the government filed a civil complaint for forfeiture of real property belonging to Jackie D. Wilson, J.C. Pate, Jr., and Rita Pate. The complaint also sought the forfeiture of $35,350.22 in cash, and one International Hough Model TD 12 dozer with all appurtenances and equipment--the dozer in Daniel's name.
 
 
 5
 In paragraph one (1) of the complaint, the government alleged that the defendant properties were subject to forfeiture pursuant to 21 U.S.C. Sec. 881(a)(6).[1] Paragraph seven (7) of the complaint, which described the dozer, makes no reference to the controlling statute or to the theory supporting forfeiture pursuant to the statute.[2] The government expressly referred to the statute and to a substantial connection between the described property and illegal drug transactions concerning each of the other properties.
 
 
 6
 On April 18, 1988, Daniel filed an answer to the complaint and a motion for judgment on the pleadings, which the district court treated as a motion for summary judgment. Daniel supported his motion with two affidavits showing that he purchased the dozer for his logging business and that he purchased it with "legitimate" funds. The government submitted an affidavit of Donald W. McArthur, Special Agent, Federal Bureau of Investigation (FBI), stating that Pate purchased the dozer for Daniel with cash, and that Pate had been convicted of illegal drug trafficking. The FBI agent's affidavit further stated that Pate had shown a pattern of buying real and personal property in the names of other individuals, that he was a close associate of Donald Daniel and Bobby Daniel, and that the purchase of the dozer for $65,000 in cash is characteristic of individuals involved in illegal drug activity.
 
 
 7
 On December 8, 1988, the district court granted summary judgment in favor of Daniel, finding no genuine issue as to any material fact and that Daniel was entitled to a judgment as a matter of law. The district court found that the complaint did not show probable cause because the government did not specifically allege that Daniel acquired the dozer as a thing of value in exchange for a controlled substance or that the dozer was traceable to such an exchange as required under the statute.[3] The district court also found the FBI agent's affidavit insufficient to create a genuine material issue of fact when compared with the affidavits of Daniel and his bookkeeper that the dozer was purchased with Daniel's $65,000 in cash. The district court specifically found no substantial evidence that Daniel or his bookkeeper filed false affidavits. It also found no substantial evidence to support a reasonable inference that Pate owned the dozer.
 
 
 8
 On December 8, 1988, the district court granted Daniel's motion for summary judgment and ordered the government to relinquish possession and control of the property to Daniel. On December 22, 1988, the government filed a motion seeking a stay of the return of the dozer and a motion for reconsideration of the district court's order granting summary judgment. The court denied both motions. Finally, on January 17, 1989, the district court denied the government's second motion for a stay of the December 8 order.
 
 III. CONTENTIONS OF THE PARTIES
 
 9
 The government contends that release of the dozer from the custody of the United States Marshal does not deprive the court of jurisdiction. The government also contends that the district court erred in granting summary judgment because a genuine issue of material fact exists as to whether Daniel is an "innocent owner," as defined in 21 U.S.C. Sec. 881(a)(6). Daniel contends that his stipulation not to remove the dozer from the jurisdiction is an insufficient basis for this court to exercise jurisdiction over the dozer. Daniel also contends that the speculations and conjectures contained in the FBI agent's affidavit are not legally sufficient to create a genuine issue of material facts.
 
 IV. ISSUES
 
 10
 The issues presented are (1) whether this court has jurisdiction over the dozer, and (2) whether the district court properly granted Daniel's motion for summary judgment.V. DISCUSSION
 
 A. Jurisdiction
 
 11
 The court has jurisdiction over the dozer. In rem jurisdiction derives entirely from the court's control over the defendant res. United States v. One Lear Jet Aircraft, 836 F.2d 1571 (11th Cir.) (in banc), cert. denied, 487 U.S. 1204, 108 S.Ct. 2844, 101 L.Ed.2d 881 (1988). In One Lear Jet, the court held that it lacked in rem jurisdiction over the aircraft because it had been removed from the court's territorial jurisdiction at the time of the appeal. The claimant did not file a motion for stay of judgment with the district court or a supersedeas bond with the appellate court. After the expiration of the automatic ten-day stay provided by Federal Rule of Civil Procedure 62(a), the government removed the aircraft to a warehouse in Missouri.[4] In United States v. One (1) 1983 Homemade Vessel Named Barracuda, 858 F.2d 643 (11th Cir.1988), the court found that it had jurisdiction over a fishing vessel that lay sunken on the bottom of Biscayne Bay. The government argued that because of the physical changes in the vessel and because of the virtual impossibility of salvaging it, the court should treat the vessel as if it had been removed from the court's jurisdiction. The court declined to treat the ability to salvage the boat as dispositive; "once in rem jurisdiction has attached, it is not defeated solely because a physical change occurs in the res." One 1983 Homemade Vessel Named Barracuda, 858 F.2d at 647.
 
 
 12
 The government has diligently attempted to maintain the court's jurisdiction over the defendant dozer. The district court denied two motions seeking a stay of the return of the dozer. The government contends that jurisdiction is supported by Daniel's sworn affidavit filed on December 28, 1988, in support of his response in opposition to the government's motion for a stay. In this affidavit, Daniel states: "I will not remove my dozer from the Northern District [of Alabama] so long as there are any pending proceedings in this case. Therefore, there will be no loss of jurisdiction."
 
 
 13
 Daniel does not now assert that the dozer has been removed from this court's territorial jurisdiction.[5] Absent any claim that the dozer is not within the court's jurisdiction, we find in rem jurisdiction over it.
 
 B. Summary Judgment
 
 14
 The government contends that the district court erred in granting summary judgment for Daniel because a genuine issue of material fact existed concerning the source of the funds used to purchase the dozer.
 
 1. Probable Cause for Forfeiture
 
 15
 In order to establish probable cause for forfeiture under section 881(a)(6), the government must show that "a substantial connection exists between the property to be forfeited and an illegal exchange of a controlled substance." United States v. A Single Family Residence and Real Property Located at 900 Rio Vista Blvd., 803 F.2d 625, 628 (11th Cir.1986) (citing United States v. Four Million, Two Hundred Fifty-Five Thousand, 762 F.2d 895 (11th Cir.1985), cert. denied, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986)) ($4,255,625.39 ). In demonstrating a substantial connection between the property and illegal drug transactions, the government is not required to show a relationship between the property and a specific drug transaction. $4,255,625.39, 762 F.2d at 904. The government's burden of demonstrating probable cause requires "less than prima facie proof but more than mere suspicion." United States v. One 1978 Chevrolet Impala, 614 F.2d 983, 984 (5th Cir.1980).
 
 
 16
 The district court found that the government's pleadings were insufficient to establish a substantial connection between Pate's illegal drug transactions and the purchase of the dozer. We agree. In addition to failing to specify what subsection of the forfeiture statute it was proceeding under regarding the dozer, the government's pleadings failed to state any connection between the purchase of the dozer and illegal drug transactions. Although the government may establish probable cause by circumstantial evidence, United States v. One 1976 Ford F-150 Pick-Up, 769 F.2d 525 (8th Cir.1985), pleadings which merely allege that the dozer was purchased with cash and placed in the name of a person other than the cash bearer do not sufficiently establish probable cause.
 
 
 17
 In United States v. $38,000 in United States Currency, 816 F.2d 1538 (11th Cir.1987), we held that the government's complaint failed to establish probable cause for the forfeiture because it was "completely devoid of factual support for the government's allegation that it [had] probable cause for forfeiture under section 881." In that case, a Drug Enforcement Administration ("DEA") agent had seized $38,000 from a person in the Atlanta Hartsfield Airport. The person holding the money claimed that he was delivering the cash to a friend's mother in Miami, Florida.
 
 
 18
 Where we have found probable cause for forfeiture, the government has demonstrated a far more substantial connection between the property and illegal drug transactions. In United States v. Four Million, Two Hundred Fifty-Five Thousand, 762 F.2d 895 (11th Cir.1985), cert. denied, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986), we upheld the forfeiture under section 881(a)(6) where the "totality of the circumstances" overwhelmingly connected the funds to illegal drugs. That case involved a money-laundering scheme in which the claimant held a checking account in the name of his travel agency and money exchange house. An employee of the claimant made cash deposits of one to two million dollars to the account as often as two or three times a week. The employee received the cash from Colombian couriers who did not request, and on occasion refused to accept, receipts for the cash, which consisted mostly of small and medium denomination bills. The claimant alleged that the purpose of the account was to facilitate the transfer of United States dollars into checks on the account or pesos to be delivered by the claimant's business in Colombia. We found that the totality of the circumstances including the nationality of the couriers and the amount of money involved--over $242,000,000 passed through the account in less than 8 months--established probable cause to believe that a substantial connection existed between the forfeited money and illegal drug transactions. The totality of the circumstances in United States v. $41,305.00 in Currency and Travelers Checks, 802 F.2d 1339 (11th Cir.1986), also established probable cause for the forfeiture. We relied on eight factors in that case including the correlation between the amount of money seized and the price of a kilo of cocaine. $41,305.00, 802 F.2d at 1344.
 
 
 19
 In A Single Family Residence, the court found that probable cause existed for a forfeiture because the drug trafficker admitted to co-conspirators that the property was purchased with proceeds from the sale of illicit drugs and that the claimant corporation had been formed specifically to hide assets from illegal drug transactions. Based on this evidence, the court found probable cause to believe that the property was purchased with profits from illegal drug sales and that the drug trafficker was the beneficial owner of the property. A Single Family Residence, 803 F.2d at 629.
 
 
 20
 By comparison, the evidence in this case is deficient in establishing a substantial connection between the dozer and illegal drug transactions. For example, the government failed to offer co-conspirator admissions or any evidence linking the dozer to illegal drug transactions. Likewise, the government offered no evidence to show that Daniel's logging business was merely a front for hiding Pate's illegal drug trafficking. On motion for summary judgment, the FBI agent based his affidavit on his personal conclusions that because Pate, a convicted drug trafficker, had a pattern of making cash purchases in the names of others, the dozer was purchased with illegal drug proceeds. We find such conclusory allegations insufficient to suggest the probable cause requirement of a "substantial connection" between the dozer--owned by a legitimate businessman--and illegal drug transactions.
 
 2. Claimant's Burden of Proof
 
 21
 "Once the government demonstrates that probable cause exists, the burden of proof in a civil forfeiture proceeding shifts to the claimant to establish by a preponderance of the evidence that the property is not subject to forfeiture." A Single Family Residence, 803 F.2d at 629 (citing $4,255,625.39, 762 F.2d at 904). The claimant can meet this burden in one of two ways: (1) by rebutting the government's evidence that the property represents proceeds of illegal drug activities; or (2) by showing that it is an innocent owner without knowledge of the property's connection with illegal drug transactions. A Single Family Residence, 803 F.2d at 629. Daniel does not claim innocent ownership; he offers proof that the dozer has no connection with illegal drug transactions. The affidavits of Daniel and his bookkeeper establish that the dozer was purchased with legitimate funds from Daniel's logging business. The bookkeeper also stated in her affidavit that Daniel transacted virtually all of his business in cash.
 
 
 22
 Daniel contends that even if probable cause existed for the seizure of the dozer, the district court's grant of summary judgment was proper because Daniel was entitled to judgment as a matter of law. The grant of summary judgment will be affirmed if the government submits insufficient evidence to send the case to a jury. See Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir.1987). Even viewed in the light most favorable to the government, the evidence supporting forfeiture only amounts to speculation and conjecture. The government's case is based on the following evidence: (1) Pate had recently pleaded guilty to managing a continuing criminal enterprise involving illegal drugs; (2) Pate was a life-long friend of Donald Daniel; (3) Pate had shown a pattern of purchasing real and personal property with proceeds from illegal drug transactions in other names; (4) photographs show the dozer parked at Pate's residence and Pate driving it; and (5) the dozer was purchased with cash, a common practice of individuals involved in illegal drug activities.
 
 
 23
 In response to the photographs, Daniel explained that he often let Pate use the dozer in exchange for Pate's uncompensated work for the logging business. The other evidence only tends to indict Pate, not Daniel's legitimate ownership of the dozer. Daniel has not been implicated in drug trafficking. He has shown a legitimate source for the funds used to purchase the dozer and a legitimate business purpose for its use. Cf. A Single Family Residence, 803 F.2d at 629 (fictitious corporation set up by drug trafficker in the name of a third person to hide drug proceeds).
 
 
 24
 It is a well-established principle of law that forfeitures are not favored and should only be enforced when they are within the spirit and letter of the law. United States v. One Ford Coach, 307 U.S. 219, 226, 59 S.Ct. 861, 865, 83 L.Ed. 1249 (1939). If the evidence offered by the government here is sufficient to cause the forfeiture of property, the property of any friend of a drug trafficker would be subject to forfeiture simply because a purchase was made with cash. Such conclusory allegations of connection to drug transactions are not sufficient to defeat Daniel's proof by a preponderance of the evidence that the dozer was purchased with legitimate funds. We hold, therefore, that Daniel was entitled to summary judgment as a matter of law.
 
 VI. CONCLUSION
 
 25
 Finding that we have jurisdiction over this case, we conclude that the district court properly granted summary judgment in favor of Daniel.
 
 
 26
 AFFIRMED.
 
 TJOFLAT, Chief Judge, dissenting:
 
 27
 In this civil forfeiture case, the Government appeals the district court's grant of summary judgment in favor of the claimant, Donald Daniel. The Government contends that genuine issues of material fact exist and requests that we remand the case for further proceedings, including discovery. The majority, however, rejects the Government's argument, holding that the Government's evidence is insufficient as a matter of law to send the case to a jury. In the majority's view, "[i]f the evidence offered by the government here is sufficient to cause the forfeiture of property, the property of any friend of a drug trafficker would be subject to forfeiture simply because a purchase was made with cash." Ante at 1251. I disagree with this conclusion and therefore dissent.
 
 I.
 
 28
 Under Federal Rule of Civil Procedure 56(c), a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In deciding a motion for summary judgment, the district court should consider the evidence in the light most favorable to the nonmoving party and draw "all justifiable inferences ... in his favor." Everett v. Napper, 833 F.2d 1507, 1510 (11th Cir.1987). A party is "entitled to 'judgment as a matter of law' " only when "the nonmoving party fails to make a sufficient showing of an essential element of the case to which the nonmoving party has the burden of proof." Id. The nonmoving party fails to make such a showing when its evidence is "insufficient ... to require submission of the case to a jury." Id. In my view, if the district court, as well as the majority today, had properly applied these standards they would certainly have found that genuine issues of material fact existed and that the Government's evidence required submission of the case "to a jury."
 
 
 29
 In order to apply these summary judgment standards, an understanding of the civil forfeiture statute here at issue is necessary. Under 21 U.S.C. Sec. 881(a)(6) (1982), "all proceeds traceable to ... an exchange [for a controlled substance] ... shall be forfeited under this paragraph." Section 881(b) provides that "[a]ny property subject to forfeiture to the United States under [section 881(a) ] may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims [of the Federal Rules of Civil Procedure] by any district court of the United States having jurisdiction over the property." Under Supplemental Rule C(3), "[i]n actions by the United States for forfeitures for federal statutory violations, the clerk, upon filing of the complaint [as provided in subsection (2) ], shall forthwith issue a summons and warrant for the arrest of the ... property."[1] Section 881(b) also authorizes seizure without process in four situations, including when "the Attorney General has probable cause to believe that the property [is subject to civil forfeiture under] this subchapter."
 
 
 30
 This court has interpreted section 881's probable cause requirement as "probable cause to believe that a substantial connection exists between the property to be forfeited and an illegal exchange of a controlled substance." United States v. Single Family Residence & Real Property Located at 900 Rio Vista Blvd., Ft. Lauderdale, 803 F.2d 625, 628 (11th Cir.1986). As this court has emphasized, the Government need not prove that such a substantial connection actually exists; it need only show "probable cause for belief " that such a connection exists. United States v. $4,255,000.00, 762 F.2d 895, 903 (11th Cir.1985) (quoting United States v. $364,960.00 in United States Currency, 661 F.2d 319, 323 (5th Cir. Unit B Nov. 1981)).[2] This court, moreover, has defined probable cause as a " 'reasonable ground for belief of guilt, supported by less than prima facie proof but more than mere suspicion'--the same standard used to determine the legality of arrests, searches, and seizures in criminal law." United States v. Four Parcels of Real Property on Lake Forrest Circle in Riverchase, Shelby County, Ala., 870 F.2d 586, 590 n. 10 (11th Cir.1989) (quoting $364,960.00, 661 F.2d at 323). Furthermore, as the court reiterated in Single Family Residence, "[t]he existence of probable cause is judged 'not with clinical detachment, but with a common sense view to the realities of normal life.' " 803 F.2d 628 (quoting $4,255,000.00, 762 F.2d at 904).
 
 
 31
 Once the Government has shown probable cause under these standards, the burden of proof shifts to parties claiming an entitlement to the property at issue, who must then establish the property's innocence. Thus, in a section 881(a)(6) forfeiture case involving property alleged to be "proceeds traceable" to a drug transaction, the claimant must show that the funds used to purchase the property were not proceeds of drug transactions.
 
 II.
 
 32
 Given this statutory framework, the district court could have granted summary judgment in these cases on two possible grounds: either (1) because as a matter of law, the evidence was insufficient to establish that the Government had probable cause and to shift the burden of proof to the claimant; or (2) because based on all of the evidence in the record, even if the Government had probable cause, no genuine issue of material fact existed that the claimant purchased the dozer with non-drug-related funds. The district court, however, did not base its decision on either ground, holding instead that "the factual and legal allegations of the complaint are simply inadequate to authorize forfeiture under ... 21 U.S.C. Section 881." Thus, in granting summary judgment, the district court did not even consider whether the Government's evidence could establish probable cause. Rather, the court determined that the Government had failed to allege in its complaint the elements of a civil forfeiture action under section 881(a)(6).[3] The majority today affirms this holding. It also holds, under the two grounds described above, that the evidence was insufficient to satisfy the Government's probable cause requirement and that even if the evidence were not insufficient to do so, no genuine issue of material fact existed that Daniel purchased the dozer with non-drug-related funds. I find both the district court's and majority's positions to be insupportable and discuss them in turn.
 
 A.
 
 33
 In my view, the Government's complaint clearly alleged the elements of a civil forfeiture action under section 881(a)(6). The gist of the district court's position, as the majority reiterates, ante at p. 1250, is that in the paragraph of the complaint describing the dozer, the Government omits the formulaic language appearing in the paragraphs of the complaint describing the other property at issue. That language expressly refers to section 881(a)(6), states that the property was purchased with proceeds of narcotics trafficking, and claims that it is subject to forfeiture. Without this language, in the district court's view and apparently the majority's as well, the Government cannot make out a section 881(a)(6) claim.
 
 
 34
 If the district court and majority had focused on what the Government's complaint does say, rather than on what it omits to say, they surely would have concluded that the complaint is sufficient to allege a section 881(a)(6) claim. To begin with, the complaint immediately states in paragraph one: "This is a civil action for forfeiture pursuant to Title 21, United States Code, Section 881(a)(6)." That statement leaves no room for doubt about the statutory basis for the Government's forfeiture claim regarding the dozer, even if the paragraphs describing the dozer fail to cite the section. In addition, paragraphs seven and eight clearly indicate that the Government has alleged that the dozer was purchased with drug proceeds. Paragraph seven states that Pate bought the dozer with $65,000 in cash. Paragraph eight then states that Pate actively imported narcotics and that Pate's tax returns show insufficient income to provide him with large amounts of currency such as the $65,000 "expended as set forth in paragraph[ ] ... 7." These statements clearly allege that the dozer was purchased with proceeds from drug transactions. Based on what the complaint does say, therefore, the Government establishes a claim that the dozer is forfeit under section 881(a)(6).[4]
 
 B.
 
 35
 In addition to its position on the insufficiency of the Government's complaint, the majority concludes that summary judgment was warranted as a matter of law because the Government's evidence was insufficient to establish probable cause and to shift the burden of proof to the claimant.[5] The majority then determines that, even if the Government had established probable cause, Daniel has shown "a legitimate source for the funds used to purchase the dozer and a legitimate business purpose for its use," ante at 1251, thus rebutting the Government's case. I disagree with these determinations. In my view, Daniel is not entitled to summary judgment: based on all of the evidence in the record, taken in the light most favorable to the Government and supporting all justifiable inferences in the Government's favor, the district court could not say that the Government's case was insufficient as a matter of law and that no genuine issue of material fact existed regarding the source of the funds used to purchase the tractor. In support of my position, I outline the analysis that both the district court and majority should have conducted: I set forth the evidence in the record and consider the inferences drawable from that evidence in order to determine whether the claimant was entitled to summary judgment.
 
 
 36
 1. The Evidence.
 
 
 37
 a. IRS Agent Brunson's affidavit.
 
 
 38
 The first piece of evidence in the record is the affidavit of IRS Agent Brunson, which the Government submitted with its complaint. In this affidavit, Brunson states that he is an IRS agent involved in the Organized Criminal Drug Enforcement Task Force and its investigation of Pate. Brunson then states that Pate was actively engaged in drug trafficking from August 1981 through October 1984 and that Pate conducted at least fifty drug transactions over that three year period (which averages seventeen transactions per year or one every three weeks). Brunson further states that Pate had a pattern of purchasing assets with grocery bags full of currency and that Pate purchased the dozer at issue in this case in exactly that manner. According to Brunson, Pate also purchased the dozer in the name of Bobby Daniel, the brother of Donald Daniel, the claimant in this case. Based on this affidavit, a reasonable factfinder could justifiably infer that Pate purchased the dozer for himself with drug proceeds.
 
 
 39
 b. Daniel's answer.
 
 
 40
 The second piece of evidence in the record is Donald Daniel's answer to the Government's complaint. In that answer, Daniel asserts that he is the dozer's sole and exclusive owner. In addition, he "denies that said property was purchased by or for J.C. Pate, Jr., and further denies that said J.C. Pate, Jr. has any interest in or claim to said property." (Emphasis added.) This denial thus states that Pate did not purchase the dozer, either for himself or for Daniel, and implies that Daniel purchased it himself and for himself. The denial also implies that a distance existed between Daniel and Pate, at least for purposes of this transaction involving the dozer: Daniel took care of the transaction, and Pate had absolutely nothing whatsoever to do with it or with the dozer in general.
 
 
 41
 c. Daniel's motion for judgment on the pleadings.
 
 
 42
 In his motion for judgment on the pleadings, Daniel contends that the Government's complaint fails to allege that the dozer is forfeit pursuant to section 881 or pursuant to subsection (a)(6) in particular, an argument that I discuss and dispel above. Daniel further argues that the dozer is not the type of property subject to forfeiture under section 881 and thus that the statute simply does not apply. Daniel also asserts lawful ownership of the dozer and contends that the complaint made no allegation that he was a drug trafficker.
 
 
 43
 d. Donald and Dorothy Daniel's affidavits.
 
 
 44
 In support of his motion for summary judgment, Daniel submits two affidavits, one from Dorothy Daniel, his sister and bookkeeper, and one from himself. Dorothy Daniel, in her affidavit, states that she processes the financial transactions of her brother's lumber business, most of which are in cash. She then states that on August 9, 1983, her brother brought $65,000.00 in cash to her house and told her to give it to Pate. According to Dorothy, her brother gave no indication of the transaction's purpose. On August 18, a bill of sale in Bobby Daniel's name arrived in the mail from Pate. Donald Daniel subsequently told Dorothy that the bill of sale was for a dozer and that Bobby's name was a mistake. Dorothy states that she cleared up the mistake by having Bobby sign a statement and by erasing his name on the bill of sale and typing in Donald's name. She further indicates that Donald's business has depreciated the dozer.
 
 
 45
 On its face, this affidavit signals a reversal in Daniel's position. Whereas Daniel denies in his answer that Pate bought the dozer, according to this affidavit Pate did buy the dozer after all. Moreover, this affidavit implies that the relationship between Daniel and Pate, especially in purchasing the dozer, was quite close: Daniel would not give $65,000.00 in cash to just anyone; he must have trusted Pate a great deal.
 
 
 46
 Dorothy Daniel's affidavit also indicates that she attempted to keep careful business records. She meticulously corrected the bill of sale problem, having Bobby sign a statement, carefully erasing his name, and retyping Donald's. In addition, she indicated that the dozer was depreciated in the business' books. Other evidence in the record, however, leads to an inference that Dorothy's records are not that reliable. To begin with, her seemingly meticulous recordkeeping is inconsistent with a casual transfer of $65,000.00 in cash to Pate without any information about the transaction's purpose, let alone any record of it until the mistaken bill of sale arrived by mail. Moreover, if Dorothy truly kept careful books, then her records of course would have included information about the previous dozer purchased by Pate for Daniel, which they traded in for the new dozer, as Daniel describes in his affidavit. Dorothy, however, makes no mention of the history behind the dozer transaction. As these inconsistencies indicate, this affidavit presents credibility questions.
 
 
 47
 Donald Daniel's affidavit also raises questions. Daniel begins by providing details about Pate's role in purchasing the dozer. Daniel describes the history of their dozer purchases, all made in cash by Pate. Daniel also mentions that Pate operated the dozers for Daniel, and without monetary compensation. When Pate thought the old dozer needed repairs, he hauled it in, and when Pate concluded the dozer was not worth repairing, he negotiated the purchase of a new one. Daniel then arranged the transfer of $65,000.00 in cash to Pate so that Pate could purchase the new dozer for Daniel. About a week later, as Daniel describes, a bill of sale came by mail for the new dozer in Bobby Daniel's name.
 
 
 48
 I find this story troublesome. At the outset, the affidavit flatly contradicts Daniel's answer to the Government's complaint. Daniel has thus lied either in his answer or in his affidavit, and in either case, this casts serious doubt on his credibility. At the very least, Daniel has demonstrated a reluctance to provide details about his relationship with Pate. This reluctance might well imply a desire to hide something. If Daniel and Pate were close--a reasonable inference from Daniel's affidavit--then Daniel would probably know that Pate was a drug dealer and Daniel would want to hide his association with Pate while making his claim for the dozer.
 
 
 49
 The affidavit, when taken alone, also suggests inconsistencies in Daniel's story. Consider this: Pate works closely with Donald Daniel, buying, operating, maintaining, and trading in Daniel's dozers; Donald Daniel gives Pate large sums of money in cash for the purchase of a new dozer; Pate goes out and purchases the dozer for Donald Daniel but puts the bill of sale in Bobby Daniel's name. I find it very difficult to believe that Pate could have worked so closely with Donald Daniel, taken $65,000.00 in cash from Donald Daniel expressly for the purpose of buying a new dozer, and then mistakenly put the bill of sale in someone else's name. At the very least, this story raises credibility questions.
 
 
 50
 e. FBI Agent McArthur's affidavit.
 
 
 51
 The next piece of evidence in the record is an affidavit of special FBI Agent McArthur, submitted by the Government in opposition to Daniel's summary judgment motion. McArthur, like IRS Agent Brunson, was a member of the Organized Crime Drug Enforcement Task Force and was involved in the investigation of Pate. In his affidavit, McArthur states that he has knowledge of how drug traffickers conceal their assets and income: for example, by using cash and purchasing property in other persons' names. He then states that Pate pleaded guilty to a charge of managing a continuing criminal enterprise from 1981 to 1985. McArthur also describes how Pate used cash to purchase property (including several dozers) in other people's names. In regard to the dozer at issue in this case, McArthur says that he has seen photos seized by search warrant from Pate's residence and that those photos show the dozer parked on Pate's property as well as Pate driving it. Finally, McArthur recounts his 1988 interview of Michael Lancaster, a long-time associate of Pate's. According to McArthur, Lancaster said that he assisted Pate in purchasing appurtenances for the dozer at issue, that Pate had been using the dozer to do some work on Lancaster's land, and that Lancaster understood the dozer to belong to Pate. McArthur adds that the dozer was seized on Lancaster's property.
 
 
 52
 Taken in the light most favorable to the Government and drawing all justifiable inferences supporting the Government's position, this affidavit suggests that the dozer was Pate's. Pate's purchase of the dozer was consistent with his general purchasing pattern--a means of concealing his illegal income and assets; and Pate's associate, who assisted Pate in purchasing appurtenances for the dozer, thought the dozer belonged to Pate. Indeed, the affidavit states that Pate did in fact have control of the dozer: he drove it and parked it on his property. Based on that control, a justifiable inference is that Pate, and not Daniel or anyone else, owned the dozer.
 
 
 53
 f. Daniel's counter-affidavit.
 
 
 54
 In my view, Daniel's counter-affidavit, filed in response to McArthur's affidavit, itself supports this inference. In this second affidavit, Daniel provides some information about his relationship with Pate and Pate's role with respect to the dozer--information that for some reason Daniel neglected to disclose in his prior affidavit and, of course, in his answer to the Government's complaint. He declares that Pate transported the dozer to the work sites and had general responsibility for its operation. In return for Pate's work, Daniel provided no monetary compensation but instead allowed Pate to use the dozer for Pate's own jobs. Daniel concludes his affidavit by reemphasizing that the dozer was purchased with his own money.
 
 
 55
 2. The Analysis.
 
 
 56
 This last affidavit, in conjunction with the other evidence, establishes the following facts: Pate bought a dozer with a large sum of money in cash and in someone else's name, and Pate exercised control of that dozer. These facts appear to be uncontested (excluding Daniel's answer, which contests the first fact); Daniel's affidavits as well as the Government's admit them. In addition to these facts, the record establishes that Pate is a convicted drug trafficker and that he had a habit of making cash purchases of property in other people's names in order to conceal his illegal assets and income. The record also includes a story by Donald Daniel, who claims to own the dozer and to have paid for its purchase (by Pate in cash) with legal proceeds from his logging business. This story, as I have discussed, is internally inconsistent and raises questions of credibility.
 
 
 57
 Reviewing this evidence under the summary judgment standards--that is, in the light most favorable to the Government and drawing justifiable inferences supporting the Government's position--I cannot understand how the district court could have concluded that no genuine issue of material fact existed and that Daniel was entitled to judgment as a matter of law. Under these standards, the evidence is not insufficient as a matter of law to show that the Government had probable cause to believe the dozer was purchased with proceeds of drug transactions. Pate, a convicted drug trafficker with a habit of making cash purchases of property in other persons' names, bought the dozer at issue with cash and in another person's name. Moreover, as the Government's complaint alleges, Pate's tax return showed insufficient legal income to support such a cash expenditure. In my view, that evidence is sufficient to withstand Daniel's motion for summary judgment.
 
 
 58
 In addition, genuine issues of material fact most certainly do exist regarding Daniel's claim to the dozer. Daniel's story, as developed through his affidavits, is, quite simply, unbelievable. When taken in the context of the other evidence in the record, that story does not make the kind of showing necessary for a grant of summary judgment.
 
 III.
 
 59
 For the foregoing reasons, I respectfully dissent from the majority's disposition of this case. In my opinion, the district court's grant of summary judgment should be vacated.
 
 
 
 [1]
 Title 21 U.S.C. Sec. 881(a)(6) provides:
 (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
 (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter, except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner. [Emphasis added.]
 
 
 [2]
 7. On or about August 9, 1983, One (1) International Hough Model TD12 Dozer equipped with D-2 hydraulic straight blade with hydraulic tilt, rops canopy, 22" track shoes, engine enclosures with perforated hood, back up alarm and all other standard equipment (S/N 729) was purchased with $65,000.00 in cash plus a trade in by J.C. Pate, Jr. On or about May 16, 1984, a new International Hough Ripper Model 21RS was purchased for this dozer by J.C. Pate, Jr. for $12,025.70 in currency. The transactions were carried out in the name of Bobby Daniels
 
 
 [8]
 Confidential informants have informed federal agents that J.C. Pate, Jr. and Jackie D. Watson have been active in the importation of marijuana, cocaine, and other controlled substances since at least 1980. In October 1984, an unclaimed aircraft was seized by agents of the Drug Enforcement Administration on Parcel 1; the aircraft contained marijuana residue and J.C. Pate, Jr.'s fingerprints. Neither Pate nor Wilson show income on their Federal tax returns which would support the large amount of currency expended as set forth in paragraphs 2 through 7, supra
 The complaint also identified Bobby and Donald Daniel as potential claimants of the dozer, but does not allege any connection between either Daniel and illegal drug transactions.
 
 
 [3]
 In an abundance of caution, the district court separately considered whether the government alleged sufficient facts to show probable cause for forfeiture under any subsection of 21 U.S.C. Sec. 881
 
 
 [4]
 Fed.R.Civ.P. 62(a) provides:
 Except as stated herein, no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry.
 
 
 [5]
 Although accidental, fraudulent, or improper removal of the res does not destroy in rem jurisdiction, after the expiration of the automatic ten-day stay provided in Federal Rule of Civil Procedure 62(a) and absent a stay pending appeal, a prevailing plaintiff is free to do as it wishes with the res, including removing it from the court's jurisdiction. U.S. v. One Lear Jet Aircraft, 836 F.2d at 1574 n. 2. We need not consider, however, the hypothetical question of whether Daniel would be subject to legal sanctions for violating the promise in his affidavit
 
 
 [1]
 This provision applies only in "actions by the United States for forfeitures for federal statutory violations." In other actions--that is, forfeiture actions not based on federal statutory violations--the section requires the court to review a "verified complaint and any supporting papers" and to determine that "the conditions for an action in rem appear to exist" before issuing an order authorizing a warrant for arrest of the property at issue
 Supplemental Rule C(2), which sets out the requirements for complaints in actions in rem, also distinguishes between "actions for the enforcement of forfeitures for violation of any statute of the United States" and actions not based on such statutory violations. In the former, the complaint need only state the place of seizure and "contain such allegations as may be required by the statute pursuant to which the action is brought." In the latter type of action, however, the complaint must also be verified "on oath or solemn affirmation." Although section 881(b) expressly refers to the Supplemental Rules in discussing seizure of property, the section makes no such reference to those Rules regarding the requirements for a complaint in a civil forfeiture action under the section. Nevertheless, a panel of this court has held that Rule C(2) (along with Supplemental Rule E(2), which further requires that "the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading") applies to forfeiture actions under section 881(a). United States v. $38,000.00 in U.S. Currency, 816 F.2d 1538, 1547-48 (11th Cir.1987).
 
 
 [2]
 In Stein v. Reynolds Sec., Inc., 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981
 
 
 [3]
 Prior to entering its summary judgment order, the court had clearly considered this case under section 881(a)(6), and that section alone. For example, in its order to issue a warrant for seizure of property including the dozer, the district court explicitly addressed the issue of "forfeiture pursuant to 21 U.S.C. Sec. 881(a)(6)" without even mentioning any other possible subsection of that statute. For some reason, however, the court changed tack while entertaining the summary judgment motion. In its memorandum opinion granting summary judgment for the claimant, the court considered in turn the applicability of every provision of section 881(a). Not surprisingly, the court concluded that provisions (a)(1)-(5) and (7)-(8) did not apply to the property at issue. Finally, the court concluded that the Government had not alleged the elements of a claim under (a)(6) either
 
 
 [4]
 Compare the complaint at issue in United States v. $38,000.00 in U.S. Currency, 816 F.2d 1538, 1547-48 (11th Cir.1987), which the court dismissed pursuant to Supplemental Rule E(2). As a factual basis, that complaint stated merely that the DEA agents seized currency at the Atlanta airport from an individual named Woods. The complaint in the present case contains a much greater degree of factual detail
 
 
 [5]
 Curiously enough, the district court had already made a determination on this probable cause issue. When the Government moved the district court pursuant to Supplemental Rule C(2) for an order to issue a warrant of arrest for the property at issue, the district court found that the Government had probable cause to believe the dozer was "subject to forfeiture pursuant to 21 U.S.C. Sec. 881(a)(6)" and issued the order for warrant of arrest